**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

SCOTT MICHAEL AND
ROOSTER'S BLUES HOUSE, LLC                                          PLAINTIFF

VERSUS                                          CIVIL ACTION NO: 3:14CV116-DMB-JAA

CLINTON L. BOUTWELL AND THE                                          DEFENDANTS
CHAR GRILLE SEAFOOD & STEAKS
LLC d/b/a OXFORD GRILLEHOUSE

                                                            JURY TRIAL DEMANDED

---

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION TO STRIKE
DEFENDANTS' ANSWER AND FOR DEFAULT JUDGMENT AND FOR SANCTIONS
BECAUSE OF DEFENDANT BOUTWELL'S THREAT TO A KEY WITNESS**

---

COMES NOW THE PLAINTIFFS, ROOSTER'S BLUES HOUSE, LLC AND SCOTT MICHAEL, by and through counsel, and submits this, their Brief in Support of Their Motion to Strike the Defendants' Answer and Default Judgment and for Sanctions, and would show the Court the following:

On February 24, 2015, Jeffrey Mote, the Defendants' former general manager, was deposed. During this deposition, he testified to a number of things which strongly supported the Plaintiffs' position, and that sharply contradicted the deposition testimony of defendant Clint Boutwell, who was present for Motes deposition. See Deposition of Jeffrey Mote, attached as an exhibit hereto. David Sage was listed in the plaintiffs initial disclosures as a witness that had heard "numerous defamatory remarks [by Boutwell] to him about the Plaintiffs and their business. See Plaintiffs' Initial Disclosures, attached as an exhibit hereto.

The following facts come directly from the affidavits of Jeffrey Mote and David Sage:

Shortly after midnight on Thursday, April 9, 2015, and after legal hours for selling

alcohol, Jeffrey Mote was sitting in the Corner Bar, an Oxford, Mississippi establishment, which is just a block from Defendant Char Grille Seafood and Steaks LLC. He was sitting at the counter with David Sage, an employee of the Corner Bar, who was counting the days receipts while other employees were cleaning up the establishment.

Mr. Boutwell came in and walked up behind David Sage on his right. Boutwell tried to cajole Sage to serve him some alcohol, despite it being after legal hours. Then there was a short, normal conversation between Boutwell and Sage. Boutwell then stated that he was going home to sleep, but then stopped and spoke to Mote, who was sitting on the opposite side of Sage. He told Mote that Mote and Plaintiff Scott Michael thought they could get him, but it would take more than they had to do so, and that he had deep pockets.

Mote stated that he didn't want anything to do with it, and that was between Boutwell and Michael. Boutwell then told Mote that, "pussies will be pussies," [a vagina reference] and then turned to leave. Before he got to the door, he turned around and said, "did you hear me Mote? Pussies will be pussies." Mote believed that Boutwell was trying to egg him into striking him.

Boutwell then left. Within a few minutes, however, Boutwell texted Mote, "and I'll find you when it's over." A copy of this text message and a previous threatening text sent to Mote by Boutwell is attached as an exhibit.

This is scared Mote, as Boutwell had previously threatened to sue him over something else, also mentioning his large resources compared to Motes, and Boutwell had started carrying a pistol in his pocket and making threatening statements toward Scott Michael and another restaurant owner who had tried to help Michael regarding the food sales issue of this case.

Plaintiffs understand that mid afternoon of April 9, Boutwell again texted Mote apologizing for his statements and claiming to be drunk and under stress. The affidavit of David

Sage makes clear that this was not true. Apparently Boutwell, realizing that, this time, his threat was in writing, decided he had to try and make an excuse for his threat.

Either Way, Boutwell demonstrated his lack of self-control in the heat of the moment, and has put a key witness in this case in fear of retaliation, and possibly of his life. Boutwell's written threat says he was going to come find Mote. This clearly goes past referring to litigation and refers to a physical confrontation.

The Plaintiffs are extremely prejudiced by Boutwell's actions. At least one key witness has been put in great fear of retaliation because of his testimony, or should he testified at trial. The Plaintiffs have no way of knowing whether Boutwell has already threatened other potential witnesses listed in their initial disclosures.

Further, Boutwell's actions are astoundingly egregious and are a direct affront to the administration of justice and the authority of this Court.

Federal courts have the authority to "punish conduct which abuses the judicial process." See *Chambers v. NASCO*, 501 U.S. 32, 33(1991). Federal district courts have both specific and inherent powers to control their docket, including the power to dismiss a case as a sanction. *United markets international Inc. v. Legg*, 24 F.3d 650, 654 (5th Cir. 1994). This also applies to striking a defendants answer. *Id.* "we will uphold a district courts in the voluntary dismissal of a lawsuit unless the District Court abused its discretion. The Fifth Circuit has confined such sanctions under the district court's inherent power to instances of 'bad faith or willful abuse of the judicial process." *Id.*

[T]ampering with the administration of justice… Involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." *Id.* at 44. In such cases, while "outright dismissal of the lawsuit… is a particularly severe

sanction, [it] is within the court's discretion." Id. see also *Johnese v. Jani-King*, 2008 WL 631237, *2(N.D. Tex. 2008). Tampering with a witness is a direct attack on the administration of justice and the Court itself, much less upon the witness and party. Id. In *Johnese*, the court granted a motion to dismiss and for sanctions because the plaintiff coached a witness during a telephonic deposition and told them what to say. This is far less severe an act than threatening an unfavorable witness.

Just imposing monetary sanctions is insufficient in cases involving witness tampering and suborning perjury, particularly regarding witnesses whose testimony goes directly to the heart of the matter. *Id*. at *3, (citing *Young v. Office of the U.S. Senate Sergeant at Arms.*, 217 F.R.D. 61, 70(D. D.C., 2003). Although courts often take a "graduated" approach to sanctions, dismissal for tampering with a witness is appropriate after only one occurrence. *Id*. at *3, (citing *Vargas v. Peltz,* 901 F.Supp. 1572, 1582(S.D. Fla. 1995); *Pope v. Federal Express Corp*. 138 F.R.D. 675, 683 (W.D. Mo. 1990).

Such sanctions are designed to not only punish the culpable party, but to also serve as a deterrent to others who are tempted to interfere with the administration of justice. *Jimenez v. Madison Area Technical College*, 321 F.3d 652, 657(7th Cir. 2003); *Aoude v. Mobil Oil Corp,* 892 F.2d 1115, 1118(1st Cir. 1989).

Even where a party only tells a witness that his testimony would cost the party problems and lots of money, which was not criminal behavior and ended up doing no harm, sanctions were appropriate, including the payment of attorney fees. *Ty, Inc. v. Softbelly's, Inc.*, 517 F.3d 494, 497(7th Cir. 2008). In the case now before this Court, however, intimidation, including threat of physical confrontation, may be criminal. 18 U.S.C.A. §1512(a)-(b). And the conduct is sanctionable even if Mr. Mote were to eventually testify at trial.

Additionally, "[a] district court may sanction a dismissal or default judgment if it it finds (1) that there is clear and convincing evidence that the bad faith misconduct occurred, and (2) that a lesser sanction would not sufficiently punish and deter the abusive conduct. *Kador v. City of New Roads*, 2012 WL 4371424*1 (M.D. La. 2012)(citing *Young v. Office of the United States Senate Sergeant at Arms,* 217 F.R.D. 61, 65 (D.D.C. 2003). In this case there is clear and convincing evidence of the conduct; the threat is written in a text. Further, there were other spoken threats, including of having deeper pockets to litigate whatever he wanted (an obvious reference to financially burying Mote in litigation). Boutwell had also made this threat against Mote previously, as also documented by text. A lesser sanction is insufficient to adequately punish such an affront to justice.

Boutwell, obviously, had to disavow this threat because he put it in writing. But from the affidavits, we can also see that Boutwell tried to get David Sage, a potential witness listed as having knowledge of Boutwell's wrongdoing against the Plaintiffs, to illegally serve him alcohol. This is an obvious way to discredit him and get him into legal trouble. Selling alcohol after hours is one of the claims that Boutwell has made against Michael in this litigation, and admits reporting to the ABC. It seems unlikely, therefore, that he would casually engage in such behavior himself. Boutwell was obviously attempting to cause a violation with which he could discredit and neutralize another witness through ABC action.

The Plaintiffs cannot know what other threats that Boutwell has made, or to whom, that weren't documented in writing. From Mote's testimony, we know that he had already carried a gun and had threatened to shoot Michael and even a restaurant owner who was only peripherally involved.

Boutwell's actions were intended to negatively affect witnesses who had and, might in the

future, hurt his case. Boutwell has demonstrated the propensity to make undocumented verbal threats. The legal process in this case has been tainted. Default judgment is a reasonable sanction by this Court.

For less grievous conduct than that in this case, other possible sanctions are monetary sanctions along with giving adverse inference jury instruction. *Riley v. City of New York*, 2015 WL 541346 *12(E.D. NY. 2015) (having witness sign a false statement). The Court may also fashion other relief as it deems appropriate.

Therefore, for the above stated reason, the Plaintiffs' pray that they be granted default judgment against the Defendants, and that a hearing be held on Plaintiffs damages. Alternatively, the Plaintiffs pray for any other relief deemed appropriate by the Court.

Respectfully submitted,

April 16, 2016                         */s/Luther C. Fisher, IV,*
                                        MS. Bar No. 8687
                                        Counsel for Plaintiffs

Luther C. Fisher, IV
Luke Fisher Law PLLC
1109 Van Buren Ave.
P.O. Box 3090
Oxford, MS 38655
662-259-0783
lfisher@lukefisherlaw.com
fisherluther@gmail.com

## CERTIFICATE OF SERVICE

I, Luther C. Fisher, IV, do hereby certify that I have this day electronically filed the **PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS' ANSWER AND FOR DEFAULT JUDGEMENT AND FOR SANCTIONS BECAUSE OF DEFENDANT BOUTWELL'S THREAT TO A KEY WITNESS** with the Clerk of the Court using the ECF system which sent notification of the filing to counsel who has registered electronically with the Court. The following attorneys are of record in this case:

Hiram C. Eastland, III
Attorney at law
103 N. Lamar Blvd, Suite 204
P.O. Box 3059
Oxford, MS 38655
**eastlandlaw3@mac.com**

        SO CERTIFIED, this the 16th day of April, 2015.


                                      */s/ Luther C. Fisher, IV*